We'll move to the next case, which is Cathay Industries v. Bellah. Mr. Gonzalez and Mr. Wittner. Morning. Morning. Mr. Gonzalez, you may proceed. Morning. May it please the court. My name is Elvis Gonzalez. I represent the appellate Cathay Industries USA, Incorporated. We are asking that the judgment entered following trial by the district court in favor of Mr. Bellah be vacated and that the action be remanded for consideration of the claims and defenses that the parties properly alleged in their pleadings. This appeal poses a fairly fundamental question about the manner in which issues are placed in controversy, and from the perspective of the appellate, comes down to two things. Do pleadings matter, and how late in a case is too late for a defendant to assert a defense? By the time this case reached trial, only one of Mr. Bellah's affirmative defenses remain, that being whether his obligations under the relevant promissory note were released when the parties entered into a payoff agreement subsequently. The district court never reached that defense, instead finding that Mr. Bellah's obligations were, as it described, canceled when the consulting services agreement was canceled. That defense was premised on the contention that parties intended for the consulting services agreement to be the sole source of repayment, that in fact the parties were contractually obligated only to use the consulting services agreement as the means of repaying the promissory note. Mr. Bellah never alleged that defense in any pleading, and regardless of whether it is a or whether it's something else, it should have still been alleged in Mr. Bellah's answer, and CAFE should have received notice of it long before it did. That's true for a number of reasons. First, the defense as formulated by Mr. Bellah implicated CAFE's performance. It required CAFE USA to do something. It either had to accept bonus payments each year to apply to the notes or it had to credit Mr. Bellah with the amount of a bonus payment in any particular year. Federal Rule of Civil Procedure 9c has been interpreted to reach not just defenses that attack a condition precedent or the non-occurrence of a condition precedent, but also performance generally. But even if the court doesn't interpret Rule 9c that way, the defense should still have been alleged in Mr. Bellah's answer because as applied by the district court, it stated a breach of contract. The only legal rationale for discharging Mr. Bellah's obligations under the note when the consulting services agreement ended is either CAFE can no longer apply the bonuses, which it's required to do, or if the consulting services agreement ended with some amounts owed that should have been applied to similar states of breach of contract. Illinois law treats breaches of contract by a plaintiff as an affirmative defense that has to be alleged by a defendant. So Federal Rule of Civil Procedure 8c would have also required that. But even if neither of those things are true, this defense is still sufficiently akin to an affirmative defense to warrant requiring that it be alleged in the defendant's answer. And the reason for that is fairly simple. Without notice to a plaintiff that a defendant intends to controvert some aspect of its performance, a plaintiff is left unprepared to develop its case fully in discovery, and as happened here, is left unprepared to fully address all of the contested issues at trial. We certainly recognize that an abuse of deferential. What justifies that finding in this case is the district court's decision to grant CAFE USA's motion to bar, and it did so based upon two findings. The first was that Rule 9c required the defense to have been alleged, and it wasn't. But separate from that, regardless of whatever pleading requirements existed, the district court found that the defense was prejudicial to permit Mr. Beller to assert it so late in the proceedings when CAFE was not given an opportunity to develop evidence in discovery to refute the central contention that the parties only intended for repayment to come from the consulting services agreement. And it's really that second basis of the district court's ruling that creates the abuse of discretion. When it then adopts that very defense, and in fact adopts it as the only basis for its ruling in favor of Mr. Beller after determining that it was so unfair that it shouldn't be presented at all at trial, that left CAFE ambushed, sandbagged, bushwhacked. Any of those colorful descriptions that we're familiar with applies here. It is not hyperbole. It is not an overstatement. So that should leave this court with a firm conviction that a mistake was made. Before reserving my time for rebuttal, I'd like to address the district court's ruling on Mr. Beller's affirmative defense of settle. The district court correctly granted summary judgment in favor of CAFE USA on that second affirmative defense, finding that there was no mutuality. And although the district court never reached the argument that CAFE USA also made that the amount that Mr. Beller sought to set off was not liquidated, the evidence in the record was clear and would be sufficient for this court to affirm on that basis as well. What Mr. Beller was attempting to do was to set off the amounts that he owed to CAFE USA under the promissory note against amounts that CAFE's parent, CAFE Holdings, allegedly owed to a company he controlled called Bel Air Investments Incorporated. And there was no dispute of that. It was a strictly legal determination that the court made that there was no mutuality because the debts arose out of different circumstances at different times. There was no dispute of fact that Mr. Beller entered into the promissory note on September 28, 2008, and CAFE Holdings entered into the consulting services agreement in January of 2007, some 20 months prior to that. There was similarly no dispute of fact that the amount that Mr. Beller sought to offset was disputed. It was the subject of ongoing litigation and under Illinois law that type of debt is simply not liquidated for purposes of set off. The new arguments that Mr. Beller raises with respect to the delegation of contractual duties by CAFE Holdings or the renewal of the 2000 of the consulting services agreement in 2012 were waived because they were they were asserted when they opposed CAFE's motion for partial summary judgment. If there aren't any questions, I'll reserve the balance of my time for rebuttal. Thank you, Gautam. May it please the court. My name is Richard Winter and I'm appearing today on behalf of William Beller, the defendant at Bel Air. Beller's position has been from the beginning of the case that the promissory note was not enforceable and if it was enforceable, he was the party's agreement, which is undisputed, by the way, the party's agreement that it would be repaid at least in part, if not in full, by amounts due under the consulting services agreement. Now, I mean, this arrangement is rather unusual. We could not find any cases which suggested that this relationship required the interplay between the two agreements required that it be pled as an affirmative defense. We couldn't find cases which suggested it was a Rule 9c issue. We couldn't find any cases suggested it was a claim that there was no performance by the plaintiff and hence an affirmative defense should be asserted to that regard. We found nothing which supports the notion that we should have pled this, pled the interplay, other than to set off as an enforceable or as an affirmative defense. Now, CAFE has taken the position, and I said it again today, that they were somehow bushwhacked or ambushed or words to that effect. I don't know who that's directed at, either the district judge or district magistrate judge Valdez or me, but in any other event, it's not correct. Judge Valdez, when she ruled on our motion to reconsider this issue of barring the affirmative defense, said that she only ruled it was not an appropriate affirmative defense. She didn't rule on the relevancy of whether there would be any information on that. We'll call it the other contract. She said that in the December 13, 2018 hearing, page 4, and I have to note that in my brief, I misquoted, I miscited that. That quote occurred on December 13th, not during the trial in April of 2019. Now, CAFE says if it had a do-over, that it would have done two things. First, it says it would have asked different questions during Mr. Bellow's deposition, but during Mr. Bellow's deposition, which was two years before the trial, he testified that he had made an agreement with Terrence Yu, the CEO of CAFE USA's parent, that we would have a consulting fee, and that would take care of the whole thing. He testified that the promissory note was basically a non-existent loan, and he testified it was only for the books, so that was known two years in advance of the trial, but for CAFE to say that they would have questioned him differently or didn't have notice is a lie by the record. CAFE also says, well, if they had known, they would have sought drafts of the promissory note, but that is not credible. They did not seek drafts of the promissory note when it was contended, and they knew that the party's agreement was that certain amounts under the consulting services agreement would offset the note in full or part. Having not sought drafts with respect to that issue, it's not credible to say we would have sought drafts if we understood the agreement was only to be satisfied with the consulting services agreement. I also have to note that we made a specific argument, that is, that it would be repaid in quotes. The promissory note would be paid through the consulting services agreement in response to CAFE's motion for summary judgment with respect to the set-off claim, so we made the argument. We put them on notice. Moreover, CAFE did not object to evidence introduced at the trial which supported the district's court ruling. Mr. Yu's deposition was used at trial, and CAFE itself designated certain portions of the deposition, including the portion in which Mr. Yu said, we lent money to Mr. Bella to pay the tax, and he would repay his loan through the bonus each year, which is exactly what the promissory note said. That's Yu's trial testimony. CAFE did not object to defendant's exhibit number two, which was a CFO, and this is defendant's exhibit two, which is a part of our appendix to the brief, and he said, quote, so the money was lent to him, Mr. Bella, with a repayment to come out of his consulting bonus payments every year. And then Mr. Bella testified at trial that the consulting services agreement was specifically designed to take care of the $1.5 million that was borrowed because I was not supposed to have out-of-pocket expense at all in this arrangement. Now, granted, that particular testimony was objected to by CAFE, but the court said it would consider the evidence in light of the entirety of the case and apparently credited the evidence at the end of the day. In sum, CAFE was not prejudiced in any way. It had noticed from the very beginning of the case what Mr. Bella's trial court's ruling, and as a result, we would ask that this court affirm the district court's ruling with respect to the – affirm the district court's ruling. There is, however, this secondary issue, which is should the court reverse and remand to the trial court. We believe that the trial court should reconsider the issue of whether it was appropriately a set-off, though arising from the consulting services agreement, setting off, in part, amounts that were due under the promise for a note. This is an alternative argument. CAFE knew full well from the very beginning that that was the party's agreement. They had documents in their possession to that effect. Mr. Hughes, our CEO, testified to that effect. And so when they moved for some re-judgment and contended that the agreement should be of parties, I mean, that was – that was completely – technically true. There is not mutuality of parties. But the intent of the parties was absolutely clear and undisputed that at a minimum, payments to another consulting services agreement were to be applied against amounts due under the promise for a note. And with that, I would ask that the court affirm this recorded decision. Thank you, Mr. Mayor. Mr. Gonzalez? Thank you. With respect to the various ways in which Mr. Bella argued that the interplay between these agreements constituted a defense, I think it's important to note that it was a constantly evolving, changing defense. And that's principally, I think, the issue that we have with the manner in which the case was ultimately decided. The purpose of requiring a defendant to assert affirmative defenses as contemplated by Rule 8c or with respect to a specific contractual defense as contemplated by Rule 9c is to avoid that scenario where a plaintiff – a defendant certainly engaged in jealous advocacy is going to want to argue as many different ways as possible that there's no liability. But at a certain point, that becomes unfair to a plaintiff, where the goalposts are constantly moving. The defense under the consulting services agreement began as a set-off defense, that there were monies owed to Mr. Bella that should set off against whatever liability he had under the promise for a note. When summary judgment was granted as to that, then it became an argument that while a condition precedent exists, when the district court determined that we haven't properly alleged a condition precedent, now it becomes a contractual breach. Even now on appeal, Mr. Bella is seeking on remand to pursue in excess of $2 million in damages under a counterclaim that he never alleged and would never be appropriate for this court to grant him relief that goes beyond what the district court entered on his behalf because a no-cross appeal was filed. So I think what it illustrates more than anything is the chaotic nature of how litigation can devolve and become disorderly, where there are not plaintiffs, where there are not a clear set of claims and defenses that all parties and the court understand will be investigated in discovery and ultimately proven or disproven at trial. With that, we would conclude our argument and again ask that the case remanded for consideration of Caffey's complaint as well as Mr. Bella's third affirmative defense and that the set off summary judgment decision be affirmed. Thank you, Mr. Gonzalez. Thanks to both counsel and the case is taken under advisement.